IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERRANCE SWAILES, | : |
| Plaintiff, | : |
| vs. | : |
| | : CIVIL ACTION 15-259-M |
| CAROLYN W. COLVIN, | : |
| Social Security Commissioner, | : |
| Defendant. | : |

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff, appearing *pro se*, seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 22).  Oral argument was waived in this action (Doc. 21).  After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the last administrative hearing, Swailes was forty-seven years old, had completed a high school education (Tr. 39), and had previous work as a general laborer, landscape laborer, security manager, and automobile mechanic (Tr. 55). Swailes alleges disability due to Neurofibromatosis, S-shaped Scoliosis, hypertension, Ampullary Neuroendocrine Tumor, status-post excision and Whipple Procedure, Hernia, Benign Prostatic Hypertrophy, Hypercholesterolemia, Renal Cysts, Urinary Wall Thickening, and an enlarged prostate (Doc. 13, p. 3).

Plaintiff applied for disability benefits and SSI on July 8, 2011, asserting a disability onset date of May 23, 2011 (Tr. 20, 168-77).  An Administrative Law Judge (ALJ) denied benefits, determining that although Swailes could not return to his past relevant work, there were specific sedentary jobs that he could perform (Tr. 20-29).  Plaintiff requested review of the hearing decision (Tr. 9), but the Appeals Council denied it (Tr. 5-7).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Swailes alleges that: (1) He meets Listing requirements; (2) the ALJ did not properly consider all of the record; (3) the ALJ did not properly consider the conclusions of his treating physicians; (4) the ALJ did not properly consider his medications and their side effects; and (5) the ALJ did not properly consider the testimony of the Vocational Expert (hereinafter *VE*) (Doc. 13). Defendant has responded to—and denies—these claims (Doc. 14). The relevant evidence of record follows.

On June 8, 2011, Plaintiff went to the University of South Alabama Medical Center (hereinafter *USAMC*) Emergency Room for chest pressure/pain with no radiation (Tr. 283-87). A chest x-ray showed increased retro cardiac opacities concerning for developing bronchopneumonia.

On June 17, Swailes was seen at Stanton Road Clinic as a follow-up to his ER visit; blood pressure was elevated, but Swailes had not taken his medications that morning (Tr. 288-89).

On April 26, 2012, Plaintiff was seen at Franklin Primary Health Center for his hypertension; medication was prescribed (Tr. 312-13). He was seen in follow-up on May 10 for hypertension and diarrhea as well as fatigue (Tr. 310-11).

On June 7, 2012, Swailes was seen at Stanton Road Clinic by Dr. Christine Austin, complaining of seven weeks of diarrhea,

3

itching, extreme fatigue, worsening numbness in his left arm and hand, and left leg swelling (Tr. 303-04, 338, 341). The Examiner noted multiple small bumps all over his body and increased hyper pigment on the left lateral leg below the knee; there was decreased sensation in his right fingers and an abnormal liver test. Swailes was admitted to USAMC for six nights for cholestatic jaundice, secondary to ampullary mass tumor (Tr. 314-22). He underwent an ultrasound, a colonoscopy, an EKG, a transthoracic echocardiogram, and endoscopic retrograde cholangiopancreatography. Swailes was discharged in stable condition, with surgery to follow.

On July 16, 2012, Plaintiff underwent surgical procedures by Dr. Carlo M. Contreras at USAMC for a malignant neoplasm of the Ampulla of Vater with obstruction of the bile duct (Tr. 396-408). Swailes underwent a Whipple procedure;[1] he tolerated the procedure well, was discharged home, stable, ten days later, and encouraged to walk daily (Tr. 323-36). On August 8, Dr. Contreras noted that Plaintiff had no particular complaints and reported that his energy level was improving with continued

---

[1]The Whipple procedure, also known as pancreaticoduodenectomy, involves removing the wide part of the pancreas next to the first part of the intestine and removing the duodenum, a portion of the common bile duct, gall bladder, and part of the stomach. The pancreas, bile duct, and remaining intestine are then reconnected. See http://www.webmd.com/cancer/pancreatic-cancer/whipple-procedure

exercise; he had been taking Lortab[2] for pain, but had had no incisional difficulties (Tr. 388-89).  Chemotherapy was not needed.  On September 5, 2012, Dr. Contreras reported that Swailes had "made a very nice recovery" (Tr. 417; *see generally* Tr. 417-18).  The left-sided J-tube was removed without any bleeding; the incision was well-healed.  Prescriptions for Ultram[3] and an anti-anxiety medication were written.

On September 17, Dr. Christina Austin wrote a letter that stated that on protracted standing/walking, Swailes experienced progressive edema of the left leg, particularly distal to the knee, and progressive pain in the left hip and low back pain (Tr. 337).  On protracted sitting, Plaintiff had to elevate his left foot to heart level to relieve/preclude edema.  On sustained or repetitive use of his left hand, he experienced progressive numbness, neuropathic pain, and weakness; he experienced the same symptoms on the right, but to a lesser extent.  Austin further stated that standing/walking or sitting six hours out of an eight-hour workday would cause him significant pain or exacerbate his condition.

---

[2]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[3]**Error! Main Document Only.***Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

On November 13, Dr. John G. Yager examined Swailes who reported that he was doing quite well from his surgery, but had pain in his left hip when walking a good bit; among his medications, he listed Tramadol[4] (Tr. 379-80).  Following a physical examination in which his impression was reports of pain in the left hip in the area of a rather large neurofibroma, Yager stated the following:

> It is felt that this would be amenable to surgical correction, however, [sic] it is felt this patient would be capable of work-related activities even having this tumor. Specifically, he should have no limitation for any sedentary-type activities and only minimal limitations in terms of ambulatory activity as he has no evidence for neuropathy that I can see at the present time.  Reflexes are normal, his strength appears normal, and dexterity appears good.

(Tr. 380).  Yager then completed a physical work-related activities form in which he indicated that Swailes was capable of lifting up to twenty pounds continuously, fifty pounds frequently, and one hundred pounds occasionally and could lift twenty pounds frequently and one hundred pounds occasionally (Tr. 381-87).  Dr. Yager further indicated that he could sit for eight hours at a time and stand/walk for two hours at a time,

---

[4]*Tramadol* "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time."  **Error! Main Document Only.***Physician's Desk Reference* 2520 (66th ed. 2012).

6

but for six hours during an eight-hour day. Swailes did not require a cane to walk. He could use both hands continuously to reach, handle, finger, feel, push, and pull; he could use foot controls on the right continuously, but only frequently on the left. Plaintiff could frequently climb stairs, ramps, ladders, or scaffolds, balance, stoop, kneel, crouch, and crawl; he had no environmental limitations.

On November 30, 2012, a radiology report from USAMC found the following: (1) marked improvement of the surgical site with no evidence of residual mass; (2) asymmetric urinary bladder wall thickening; (3) prominent S-shaped scoliosis; (4) right pelvic kidney with bilateral renal cysts; (5) an enlarged, but stable, prostate; and (6) unchanged lytic lesions with sclerotic margins within the bilateral iliac bones (Tr. 414-15).

On February 27, 2013, an Examiner at Stanton Road Clinic saw Plaintiff for a big mass lateralized to the right side of his midline incision (Tr. 416).

On March 25, Dr. G. C. Oswalt, Urologist, examined Swailes for incomplete emptying of the bladder, frequent urination, weak stream, and nocturia four times a night for the previous eight months; the symptoms were stable, mildly bothersome, but worsening (Tr. 430-33). The Doctor diagnosed benign enlargement of the prostate with an obstructive tumor and hematuria for

which medications were prescribed. On April 9, Oswalt noted significant improvement (Tr. 427-29).

After reviewing the evidence of record, the ALJ found that Plaintiff had the residual functional capacity to perform no more than a restricted range of sedentary work (Tr. 23). The ALJ went on to specifically find that

> [h]e can lift and/or carry 10 pounds occasionally and 5 pounds frequently. He can stand and/or walk 2 hours but no more than 30 minutes at a time. He can sit 6 hours but no more than 1 hour at a time. He can perform frequent pushing and/or pulling with the right upper extremity, occasional pushing and/or pulling with the left upper extremity, frequent pushing and/or pulling with the right lower extremity; and occasional pushing and/or pulling with the left lower extremity. He can perform occasional balancing, occasional stooping, occasional kneeling, occasional crouching, occasional crawling, and occasional climbing of ramps and stairs. He can perform no climbing of ladders, ropes or scaffolds. The claimant can perform frequent reaching, bilaterally. He can perform continuous handling with the right hand, frequent handling with the left hand, continuous fingering with the right hand, frequent fingering with the left hand, continuous feeling with the right hand, and frequent feeling with the left hand. He can tolerate occasional exposure to vibration. He must avoid all exposure to unprotected heights and avoid all exposure to dangerous machinery. He can sustain concentration and attention for 2-hour periods with customary breaks.

(Tr. 23).

In bringing this action, Swailes first claims that he meets Listing requirements. Plaintiff references Listings 1.00 and 1.04 (Doc. 13, p. 2).

The Court notes generally that the Listings describe impairments that are so severe that they are considered disabling without further analysis. 20 C.F.R. § 404.1525(a). A claimant must, however, provide evidence showing that the Listing requirements are satisfied. *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). The Court further notes that

> [t]o "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listing and the duration requirement. *See* 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." *See* 20 C.F.R. § 404.1526(a).

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).

The Court notes that Listing 1.00 is the introductory section for the list of disabilities found within the musculoskeletal system. The Listing section explains various terms of art and describes how decisions regarding those disabilities are determined. There is, however, no disability found within Listing 1.00.

Listing 1.04 concerns disorders of the spine. 20 C.F.R.

Part 404, Subpart P, Appendix 1, Listing 1.04 (2015). Subsections A, B, and C deal with, respectively, nerve root compression, spinal arachnoiditis, and lumbar spinal stenosis. The Court notes that although Plaintiff has provided evidence of scoliosis, the record does not support a finding that he meets the Listing. The diagnosis itself does not satisfy the Listing requirements. 20 C.F.R. § 404.1525(d).

    The Court finds that Swailes has not demonstrated that he meets—or equals—the requirements of any Listing. His claim otherwise is without merit.

    Plaintiff next claims that the ALJ did not properly consider all of the record. More specifically, Swailes asserts that he did not consider evidence "involving Neurofibromatosis, S-shaped scoliosis, Dura Ectasia, and unchanged Lytic Lesions with sclerotic margins within the Bilateral Iliac Bones, and Lumbosacral (R. 321, 322, 333, 334, 415)" (Doc. 13, p. 2).

    The Court notes that the pages cited refer to Exhibits 7F, 8F, and 13F in the Transcript and were summarized by the ALJ (Tr. 26). The Court further notes that the first four cited pages (Tr. 321-22, 333-34) reference medical tests and findings that pre-date and were on the date of Dr. Contreras's surgery; the surgeon characterized the surgery as successful and Plaintiff's condition stable (*see* Tr. 323-36, 388-89, 417). Finally, the Court notes that the last page cited (Tr. 415)

10

reveals diagnoses from tests but does not demonstrate debilitating impairments. Again, diagnoses alone do not satisfy Listing requirements, 20 C.F.R. § 404.1525(d), or demonstrate an inability to work. The Court notes that Plaintiff's bare assertion that the ALJ did not properly review the record, without pointing to what was missed and how it demonstrates functional limitation, is of no merit.

Swailes next claims that the ALJ did not properly consider the conclusions of his treating physicians. It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[5] *see also* 20 C.F.R. § 404.1527 (2015).

The Court first notes that Plaintiff references no particular physician in bringing this claim, though he does refer to pages 279-80, representing a portion of a brief submitted by his attorney at the administrative level (*see* Doc. 13, p. 2). The Court notes that the argument therein concerns, primarily, medical evidence from Dr. Austin pre-dating his surgery. The ALJ specifically found that Austin's findings of

---

[5]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

limitation (*see* Tr. 337) did not merit substantial weight since they were inconsistent with the treatment and medical evidence of the balance of the record (Tr. 27).  The Court finds substantial support for that conclusion, noting that Austin's few appearances in the record fail to provide support for the extreme limitations suggested.  This claim is of no merit.

Swailes next claims that the ALJ did not properly consider his medications and their side effects.  The Court notes that Plaintiff fails to provide any details concerning the deficiency asserted.  Reviewing the record independently, the Court has found no error.  Plaintiff's claim is without merit.

The final claim by Swailes is that the ALJ did not properly consider the testimony of the VE.  Plaintiff specifically refers to the questions posed to the VE at the hearing, concerning his ability to sustain concentration and attention, missing work, and needing to take unscheduled breaks (Doc. 13, p. 2).

The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision.  *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).  More recently, in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1181 (11th cir. 2011), the Eleventh Circuit Court of Appeals held that, after

determining that a claimant had a moderate limitation in maintaining concentration, persistence, or pace, an ALJ had to either determine that the limitation would not affect the claimant's ability to work or include that limitation as part of the hypothetical question to the VE.

The Court notes that although questions were posed to the VE regarding these limitations and that the answers would suggest that the hypothetical individual would not be able to work (Tr. 80-83), the ALJ did not find that Swailes had those limitations. Furthermore, Plaintiff has not pointed to objective medical evidence showing that he actually had those restrictions. Therefore, his claim is without merit.

Plaintiff has raised five different claims in bringing this action. All are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 15th day of January, 2016.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE